IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE PHOENIX INSURANCE COMPANY, a Connecticut corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 21 C 1898 ) |
| THE CINCINNATI INSURANCE COMPANY, an Ohio Corporation, | ) Judge Joan H. Lefkow ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

This action involves an insurance coverage dispute.[1] The Phoenix Insurance Company and Cincinnati Insurance Company have filed cross-motions for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, Phoenix's motion is granted and Cincinnati's denied.

**BACKGROUND**[2]

Sherman Garden is an apartment complex in Evanston, Illinois. (Dkt. 28-1 ¶2.) In June 2014, Sherman Garden entered into a contractor agreement, referred to in this action as the "Prime Contract," with Team Reil, Inc. to make improvements to its parking lot. (Dkt. 28-1 ¶¶5.a., 14; dkt. 29 ¶¶8, 14–16). The Prime Contract required, among other things, that Team Reil include Sherman Garden as an additional insured under its insurance policy. (Dkt. 28-1 ¶16; dkt. 29 ¶¶10–11). The scope of the coverage for this insurance policy extended to both ongoing

---

[1] This court has jurisdiction under 28 U.S.C. § 1332. Venue is proper under 28 U.S.C. § 1391(b)(2).

[2] The following facts derive from the parties' LR 56.1 statements of undisputed facts. No material facts are in dispute.

operations, which included incidents occurring while the project was underway, and completed operations, which included incidents that occurred after the job was done. (Dkt. 29 ¶10.) The Prime Contract also required that the additional insured coverage be primary and non-contributory with any insurance carried by Sherman Garden. (*Id.* ¶11.)

Team Reil subcontracted with Ross & Barr, Inc. to fabricate and install carports. (Dkt. 28-1 ¶17; dkt. 29, ¶9.) Article 6.3 of their subcontract required Ross & Barr to include certain parties as additional insureds under its insurance policy for ongoing operations coverage. (Dkt. 28-1 ¶19.) Under article 6.4, moreover, Ross & Barr was required to "provide satisfactory evidence of insurance which shall meet the same requirements set forth in the Prime Contract to the Contractor." (Dkt. 28-1 ¶19; dkt. 29 ¶15). Ross & Barr completed its work in May 2015. (Dkt. 28-1 ¶20).

Cincinnati provided liability insurance to Ross & Barr. (Dkt. 28-1 ¶22). That insurance policy included an endorsement stating that, if a written contract specifies that coverage for additional insureds include completed operations coverage, then the endorsement "shall be interpreted as providing the limits or coverage required by the terms of the written contract." (Dkt. 29 ¶19.)

In January 2016, Tareq Kreishan sued Sherman Garden, in *Kreishan* v. *Sherman Garden*, No. 16 L 62013 (Cir. Ct. Cook Cty., Ill.), for injuries that he sustained from a slip-and-fall accident in its parking lot, allegedly caused by an unnatural accumulation of snow and ice from the carports that were installed by Ross & Barr. (Dkt. 28-1 ¶¶3–4; Dkt. 29 ¶¶5–7.) Phoenix, Sherman Garden's insurer, defended Sherman Garden in the lawsuit and tendered its defense obligations to Cincinnati. (Dkt. 28-1 ¶¶26–30; dkt. 29 ¶¶25–28). Cincinnati declined, claiming

that Ross & Barr's insurance obligations under the subcontract did not cover completed operations. (Dkt. 28-1 ¶29).

Phoenix paid $61,750.00 toward the settlement of claims in the Kreishan lawsuit while reserving its right to seek reimbursement from Cincinnati. (Dkt. 29 ¶29). Phoenix also incurred $14,023.18 in attorney's fees and costs. (*Id.* ¶30).

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the existence of cross-motions for summary judgment does not guarantee that there are no genuine issues of material fact, *see R.J. Corman Derailment Servs., LLC* v. *Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003), no party here has identified a dispute as to any material fact and both parties move for judgment as a matter of law based on competing interpretations of the same contracts, *e.g.*, *Hess* v. *Travelers Cas. & Sur. Co. of Am.*, No. 11 C 1310, 2013 WL 623981, at *2–*3 (N.D. Ill. Feb. 20, 2013). Nevertheless, the court still views the facts according to each motion's respective burden and draws reasonable inferences in the correct direction. *See Int'l Bhd. of Elec. Workers, Local 176* v. *Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002).

## ANALYSIS

The issue presented in the cross-motions for summary judgment is whether the subcontract between Team Reil and Ross & Barr incorporated the insurance coverage requirements in the Prime Contract between Team Reil and Sherman Garden. The short answer is that it does, thereby obligating Cincinnati to provide completed operations coverage on a primary, non-contributory basis to Sherman Garden in the Kreishan lawsuit.

3

Under Illinois law,[3] "a subcontract may incorporate provisions of a contract." *W. Bend Mut. Ins. Co.* v. *Athens Const. Co.*, 29 N.E.3d 636, 643 (Ill. App. Ct. 2015). Incorporation is not complicated: "To incorporate another document, the reference must show an intention to incorporate the document and make it part of the contract." *Id*. Such intent can be shown where a subcontract states that it must conform to the provisions of another contract. *Id*. By contrast, the mere reference to another contract is insufficient for incorporation. *See, e.g.*, *Kogan* v. *Scandinavian Airlines Sys.*, 253 F. Supp. 3d 1022, 1025 (N.D. Ill. 2017).

Here, article 6.4 of the subcontract states that, "[s]ubcontractor shall provide satisfactory evidence of insurance which shall meet the same requirements set forth in the Prime Contract to the Contractor." (Dkt. 24 at 4, ¶15.) This language plainly and unambiguously expresses an intent that Ross & Barr would provide the same insurance coverage as required in the contractor agreement between Team Reil and Sherman Garden, *i.e.*, the Prime Contract.

Although Cincinnati initially overlooked article 6.4 in its motion for summary judgment, it acknowledges the reference in response to Phoenix's motion but maintains that there are other bases to conclude that incorporation was not intended. No basis is persuasive.

Cincinnati first claims that there is no intent to incorporate because the Prime Contract and subcontract conflict as to the scope of work for each contract, they are separate agreements that were entered into at different times, and they have different insurance coverage requirements. These are differences, but not conflicts. Cincinnati merely describes the nature of subcontracting. Nor can the insurance requirements conflict because, as explained above, the subcontract incorporates the Prime Contract's insurance requirements.

---

[3] The parties agree that Illinois law applies. *See Fednav Int'l Ltd.* v. *Cont'l Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010).

Cincinnati next asserts that a single mention of "Prime Contract" is "patently insufficient" for incorporation. But Illinois law imposes no arbitrary threshold number of mentions for incorporation. And contrary to Cincinnati's position, this case is nothing like *Kogan*, where an airfare contract between the airline carrier and passengers "merely acknowledge[d] the possibility that some passengers may have 'rights subject to [a certain governmental regulation]'" and otherwise showed no intent to incorporate substantive rights from some other body of law. 253 F. Supp. 3d at 1026. *Kogan* also explained that cases where there was an intent to incorporate other substantive rights involved language stating that passengers would be entitled to compensation "according to" or "as established in" a certain regulation, *id.* (cleaned up, citations omitted), similar to article 6.4's mandatory language that the subcontractor provide the same insurance as in the Prime Contract (that is, according to or as established in the Prime Contract).

Cincinnati also argues that article 6.4's use of the term "Prime Contract" does not show an intent to incorporate the Team Reil-Sherman Garden contract because that contract refers to itself as "the Agreement." But the subcontract is not ambiguous as to which contractor agreement is at issue. "Prime Contract" is followed by "to the Contractor," meaning that "Prime Contract" is descriptive of whatever contractor's contract is relevant to the project, and there has been only one contractor and one subcontract identified in the Sherman Garden parking lot improvement project. Nor has Cincinnati identified evidence suggesting that the subcontract is or could be referencing some other contractor agreement. And Cincinnati's attempt to inject uncertainty around the Prime Contract at such a late stage is disingenuous because its answer admitted that the Team Reil-Sherman Garden contract was the "Prime Contract" (*e.g.*, dkt. 10

5

¶¶9, 13) and its own motion for summary judgment referred to that contract as the "Prime Contract" (*see generally* dkts. 20, 21.)

Given this outcome on the merits, there is no need to evaluate whether Cincinnati is estopped from denying coverage.

## CONCLUSION AND ORDER

The Phoenix Insurance Company's motion for summary judgment (dkt. 22) is granted and The Cincinnati Insurance Company's motion for summary judgment (dkt. 19) is denied. The court declares that Cincinnati Insurance Company owes a duty to defend and indemnify Sherman Garden Apartments Trust in the *Kreishan* v. *Sharman Garden Apartment Trust* action and it shall reimburse The Phoenix Insurance Company for its expenses and fees from that action in the amount of $75,773.18. The clerk is directed to enter judgment accordingly. Case terminated.

Date: April 25, 2022

_____
U.S. District Judge Joan H. Lefkow